**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NATHALIE M.,**[1]<br>**Plaintiff,**<br>**v.**<br>**COMMISSIONER OF SOCIAL SECURITY,**<br>**Defendant.** | **Case No. 25–cv–14381–ESK**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff Nathalie M.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration (Commissioner) partially denying her application for Social Security disability insurance benefits (ECF No. 4–2 (R. Part 2) pp. 22–43).[2] Plaintiff contends that the administrative law judge (ALJ) erred when setting plaintiff's disability onset date over 44 months beyond the date plaintiff contends she became disabled. (ECF No. 5 (Mov. Br.) pp. 7.)[3] Specifically, plaintiff

---

[1] Plaintiff is referred to by her first name and last initial consistent with D.N.J. Standing Order 2021–10.

[2] It is my general practice to label documents that appear multiple times within an opinion. The record here is separated into parts, with each part containing multiple documents. To avoid confusion, I will adopt this convention without further specifying the cited document.

[3] "The onset date is the first day an individual is disabled as defined by the [Social Security] Act, and is significant here in that it affects the period of time for which [p]laintiff can be paid [disability insurance benefits]." *Buckley v. Comm'r of Soc. Sec.*, No. 09–04275, 2010 WL 3515584, at *10 (D.N.J. Aug. 31, 2010); *see* Social Security Ruling 83–20, Program Policy Statement: Titles II and XVI: Onset of Disability (PPS–100), 1983 WL 31249 (S.S.A.1983) (SSR 83–20). Although plaintiff indicates that the issue in this appeal is whether the ALJ correctly determined the onset date of her disability (Mov. Br. p. 7), plaintiff does not argue that the ALJ failed to follow SSR 83–

argues that the ALJ reached conclusions as to her residual functional capacity (RFC) without fully considering her underlying conditions. (*Id.* pp. 12, 13.) For the following reasons, the Commissioner's decision will be **AFFIRMED**.

## I. BACKGROUND

On January 13, 2022, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning October 4, 2019. (R. Part 2 p. 25.) The application was denied initially on June 21, 2022 and on reconsideration on May 23, 2023. (*Id.*) The ALJ held a hearing on August 8, 2024 and a vocational expert testified. (*Id.*) On August 28, 2024, the ALJ issued a partially favorable decision, concluding that plaintiff was disabled when she turned 55 on June 28, 2023 but not prior to that date. (*Id.* pp. 22, 26.) On June 27, 2025, plaintiff's request for review was denied (*id.* p. 2), making the August 2024 decision the Commissioner's final decision.

## II. LEGAL STANDARD

### A. Standard Governing Benefits

Disability insurance benefits are available under the Social Security Act to program contributors who have a disability. 42 U.S.C. § 423(a)(1); *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020). The term "disability" includes the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

20. Instead, plaintiff argues that the ALJ's five-step analysis was incomplete. (*See generally id.*) Since I can only consider the arguments plaintiff raises, I will not address whether the ALJ complied with SSR 83–20. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

An individual is disabled only if their disability is of such severity that not only can they not engage in their prior line of work, but—considering their age, education, and work experience—they cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

ALJ's follow a five-step sequential process to determine whether an individual is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). The ALJ first determines whether the individual is engaged in substantial gainful activity and—if not—moves to the second step, analysis of the severity of the individual's impairment. *Thomas v. Comm'r Soc. Sec.*, 856 F. App'x 400, 403 (3d Cir. 2021). Third, the ALJ compares the individual's impairment "to a list of impairments 'presumed severe enough to preclude any gainful work.'" *Id.* (quoting *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)). If the individual's impairment is not listed, the ALJ determines at step four whether they have retained sufficient RFC to perform past relevant work. *Id.* If the individual can perform past relevant work, they are not disabled. *Id.* Finally, if the individual cannot return to past relevant work, the ALJ determines at the fifth step whether the impairment precludes adjustment to other work. *Id.*

The burden is on the claimant through the first four steps but shifts to the Commissioner for the fifth step. *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 686 (3d Cir. 2020). The Commissioner must prove that the claimant can adjust to other work. *See* 20 C.F.R. § 404.1520(a)(4)(v); *Orr v. Comm'r Soc. Sec.*, 805 F. App'x 85, 90 (3d Cir. 2020). Determination of what type of work an individual is capable of performing may come from a variety of sources, including the Dictionary of Occupational Titles and vocational expert testimony. *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014).

**B. Standard of Review**

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Factual findings, "if supported by substantial evidence, shall be conclusive." *Id.*; *see also Appau v. Comm'r Soc. Sec.*, 847 F. App'x 149, 151 (3d Cir. 2021) ("Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005))). Review of an ALJ's decision "is highly deferential" and "[t]he substantial-evidence threshold 'is not high.'" *Sisco*, 840 F. App'x at 687 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "Substantial evidence 'means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Id.* (quoting *Biestek*, 587 U.S. at 103). Courts are bound by an ALJ's findings so long as they are supported by substantial evidence even if the court would have decided the matter differently. *See Taylor v. Comm'r of Soc. Sec.*, 826 F. App'x 224, 226 (3d Cir. 2020).

An ALJ must sufficiently develop the record and explain findings in order to permit meaningful review when the decision is read as a whole. *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021). In so doing, an ALJ need not use any particular language or format. *Id.* Though there is deference afforded to the ALJ's evaluation of evidence, witnesses, and expert opinions, "remand is necessary 'where we cannot ascertain whether the ALJ truly considered competing evidence, and whether a [plaintiff's] conditions, individually and collectively, impacted' his ability to work." *Grier v. Comm'r Soc. Sec.*, 822 F. App'x 166, 170 (3d Cir. 2020) (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)).

## III. THE ALJ DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 4, 2019, the alleged onset date. (R. Part 2 p. 28.)

At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine; osteoarthritis of the hips and knees; psoriatic arthritis; and fibromyalgia. (*Id.* pp. 28–29.) The ALJ found that plaintiff's medically determinable impairments of post-transient ischemic attack, depression, and anxiety are non-severe and cause no more than a "minimal limitation in [her] ability to do basic work activities." (*Id.*)

At step three, the ALJ considered various listings and determined that since the alleged onset date, plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity" of any of the impairments listed by the regulations. (*Id.* pp. 29–30.) Specifically, the ALJ found that plaintiff's impairments did not satisfy listings 1.15, which requires imaging confirming compromise of a nerve root, or listings 1.18, and 14.09(A), which both require documented medical need for any assistive device. (*Id.* p. 29.) Although no separate listing exists for fibromyalgia, the ALJ determined that plaintiff's fibromyalgia did not meet the requirements of listing 14.09D. (*Id.* p. 30.)

At step four, the ALJ concluded that since October 4, 2019, plaintiff has had the RFC to perform light work, with certain additional capabilities and limitations, including occasionally climbing stairs, ramps, ladders, ropes, and scaffolds. (*Id.* p. 30.) Plaintiff can also balance, stoop, kneel, crouch, and crawl. (*Id.*) Plaintiff's testimony supported finding that "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.* p. 31.)

The ALJ acknowledged evidence of chronic pain, spinal degeneration, arthritis, fibromyalgia tender points, reduced ranges of motion, and some weakness and sensory deficits. (*Id.* pp. 29–34.) But because plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not fully supported" by the record, or "any opinion statement from a treating or examining provider," the ALJ found these activities inconsistent with the degree of pain plaintiff alleged. (*Id.*) The ALJ determined that while plaintiff "is unable to perform past relevant work" as a registered nurse as that work is generally performed, the ALJ concluded that "the restrictions identified in the [RFC] adequately account for these limitations." (*Id.* pp. 33, 35.)

At step five, the ALJ reached different conclusions for the periods before and after June 28, 2023, which is when plaintiff's age classification changed from a person closely approaching advanced age to a person of advanced age. (*Id.* pp. 35, 36.) For the period before June 28, 2023, the ALJ found that because plaintiff could adjust to other work existing in significant numbers in the national economy, she was not disabled. (*Id.*) Relying on the vocational expert's testimony, the ALJ identified the following jobs: (1) the representative occupations of price marker, with approximately 129,000 jobs nationally; (2) routing clerk, with approximately 35,000 jobs nationally; and (3) electronics assembler, with approximately 40,000 jobs nationally. But for the period beginning on June 28, 2023, the ALJ determined that plaintiff's education, work experience, RFC, and lack of transferable skills required a finding of disability under Medical-Vocational Rule 202.06. (*Id.*)

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on the ground that she showed by a preponderance of the evidence that she was disabled from October 4, 2019, through June 28, 2023. (Mov. Br. pp. 7, 13–24.) Plaintiff first argues that the

ALJ's conclusion that she retained the RFC to engage in light work during that period was not supported by substantial evidence or an adequate explanation for discounting the contrary evidence. (*Id.* pp. 13–24.) Second, plaintiff argues that the ALJ's step five finding that alternative work was available rested on the erroneous RFC finding. (*Id.* pp. 24–26.) The Commissioner filed an opposition brief (ECF No. 7 (Opp'n Br.)), in response to which plaintiff filed a reply brief (ECF No. 8 (Reply Br.)).

### A. RFC[4]

"To assess the RFC, the ALJ must consider all relevant evidence from the record, which includes statements from medical sources and the claimant's own description of her limitations." *Morel v. Colvin*, No. 14–02934, 2016 WL 1270758, at *6 (D.N.J. Apr. 1, 2016); *see De La Cruz v. Astrue*, No. 10–04458, 2011 WL 3502360, at *8 (D.N.J. Aug. 10, 2011) ("Several factors are relevant to an ALJ's evaluation of the opinions of a treating physician, including (1) the relationship between the doctor and the claimant, (2) the supportability of the doctor's opinion, (3) its consistency, (4) any specialization of the doctor, and (5) any other factors the court chooses."). All medically determinable impairments, regardless of whether they are severe or non-severe, must be considered. *Rutherford*, 399 F.3d at 554 n. 7; Social Security Ruling 96–8p, Program Policy Statement: Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (S.S.A. 1996) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or

[4] Within the summary section of the moving brief, plaintiff takes issue with the ALJ having found some of her conditions as not-severe. (Mov. Br. pp. 10, 11.) Since plaintiff does not specifically argue that the ALJ's severity determination was not supported by substantial evidence, I will not address this argument.

restrictions due to other impairments—be critical to the outcome of a claim."). But the ALJ may reject a "plaintiff's subjective complaints of pain … when they are inconsistent with objective medical evidence in the record." *Morel*, 2016 WL 1270758, at *6. "If a claimant's symptoms 'suggest a greater functional restriction than is demonstrated by the objective evidence alone, the Commissioner considers evidence such as the claimant's statements, daily activities, duration and frequency of pain, medication, and treatment.'" *Id.* (quoting *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 111 (3d Cir. 2006)). "The claimant need not be pain-free to be found 'not disabled' especially when her work issue requires a lower exertional level." *Id.*

"The ALJ has discretion to evaluate [a plaintiff's] credibility and arrive at an independent judgment in regards to the true extent of the pain alleged given medical findings and other evidence." *Id.* ("Courts will defer to the ALJ's credibility determination because the ALJ had the opportunity to assess the witness' demeanor at a hearing."). "[I]f the ALJ determines that the testimony is not credible, he must indicate the basis for his conclusion." *Id.* "The Third Circuit recognizes the 'acute need for some explanation by the ALJ when he has received relevant evidence or when there is conflicting probative evidence in the record.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). In other words, "[t]he RFC assessment must be supported by a clear statement of the facts upon which the finding is based." *Id.*

Plaintiff argues that the ALJ could not have provided a logical bridge between the evidence and his finding that she was capable of light work. (Mov. Br. pp. 13–24.) Plaintiff suggests that although the ALJ discussed portions of the medical record, he misstated and selectively cited the evidence, excluding that which supports greater functional limitation. (*Id.* pp. 13–16; Reply Br. pp. 6, 7.) For example, the ALJ allegedly minimized evidence of plaintiff's degenerative spinal changes, chronic pain, fibromyalgia, psoriatic arthritis,

impaired hand and wrist function while also failing to account for the combined effects of her obesity, urinary incontinence, and diabetes. (Mov. Br. pp. 7–9, 14–15, 19; Reply Br. pp. 4–6.) Of note, plaintiff acknowledges that she did not raise obesity as an impairment or limitation before the ALJ but suggests that her height and weight were sufficient to alert the ALJ that obesity could be a factor. (Mov. Br. p. 11; *see* ECF No. 4–3 (R. Part 3) p. 2.) The Commissioner responds that "[n]o medical source offered a persuasive medical opinion showing greater limitations were warranted, and the medical record does not demonstrate that further limitations were necessary." (Opp'n Br. p. 9.)

I find that the ALJ provided a detailed summary and discussion of plaintiff's limitations and medical records. (*See* R. Part 2 pp. 28–34.) Although plaintiff argues that the ALJ should have more thoroughly considered aspects of her history, plaintiff offers no evidence as to how there was substantial error. The ALJ discussed at length plaintiff's cognitive and degenerative conditions. (*Id.*) For example, he expressly evaluated plaintiff's limitations arising from her transient ischemic attack, anxiety, depression, and cognitive complaints, including difficulties with concentration and word finding. (*Id.*) The ALJ sufficiently found no more than mild limitations pursuant to the criteria, and relied on plaintiff's generally routine treatment, largely unremarkable mental-status findings, reported activities, and the state-agency psychological assessments. (*Id.* pp. 28, 33.) Although plaintiff contends that it was unreasonable for the ALJ to infer her broader functional abilities from how she interacted with treating physicians (Mov. Br. pp. 16, 17), the ALJ's decision, when read as a whole, does not rest on that observation alone (R. Part 2 pp. 28–34).

To the extent plaintiff takes issue with the ALJ not finding Dr. Coubarous and Dr. Cornejo's opinions persuasive (Mov. Br. pp. 17–20), an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to

any medical opinion(s) or prior administrative medical finding(s), [] including those from [the plaintiff's own] medical sources." 20 C.F.R. § 404.1520c(a). Rather than assigning weight to medical opinions, the ALJ considers the persuasiveness of a medical opinion or finding. *Id.* Consistent with this regulation, the ALJ did just that. *See Wellington v. Kijakazi*, No. 22–05042, 2023 WL 5551030, at *6 (D.N.J. Aug. 29, 2023) ("[T]he ALJ did not merely announce her RFC determination without providing any support or explanation. She appropriately evaluated the objective medical record."); *Jose v. Kijakazi*, No. 19–19077, 2023 WL 5125533, at *4 (D.N.J. Aug. 9, 2023) (finding that the ALJ's discussion of the objective medical evidence "indicates that his RFC determination is supported by substantial evidence and that it resulted from his 'careful consideration of the entire record'"). As to Dr. Coubarous, the ALJ noted that "[h]er opinion is consistent with a finding that the claimant could not engage in even sedentary exertional level work, which is inconsistent with … [plaintiff's] documented daily activities and clinical examinations throughout the record." (R. Part 2 p. 34.) Similarly, because Dr. Cornejo "did not identify a specific exertional level other than 'sedentary activities'" and "did not provide a full function-by-function assessment of … [plaintiff's] abilities and limitations," the ALJ found his opinion "less than fully persuasive." (R. Part 2 pp. 33, 34.)

Plaintiff correctly notes that the ALJ failed to expressly mention her urinary incontinence, obesity, and diabetes in his decision. (Mov. Br. pp. 11, 18.) But an ALJ's failure to expressly discuss a plaintiff's underlying condition does not necessarily require remand. *See Rutherford*, 399 F.3d at 552–53. The condition may be deemed indirectly considered when the ALJ reviewed the medical records and relied on opinions from physicians who were aware of the condition and incorporated its resulting limitations into their assessments. *Id.* Plaintiff was briefly asked about her urinary incontinence during her hearing,

but no mention of her diabetes or obesity was made. (R. Part 2 p.55.) Yet, the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments. (*See* Part 3 pp.2–18; Opp'n Br. p.9.) Because her doctors must have assessed all of plaintiff's underlying conditions, I find the ALJ's general reference to these records satisfactory. *See Rutherford*, 399 F.3d at 553.

**B. <u>Step Five</u>**

Plaintiff argues that because the ALJ's RFC analysis was deficient, the ALJ's finding that plaintiff could perform other work cannot be sustained. (Mov. Br. pp.21–23.) Specifically, plaintiff takes issue with the ALJ having presented the vocational expert with a hypothetical predicated on the ALJ's faulty RFC determination. (*Id.*) In support of her position, plaintiff cites the Medical-Vocational Guidelines, which provide that an individual closely approaching advanced age who is limited to sedentary work, can no longer perform past relevant work, and has no transferable skills is "disabled." 20 C.F.R. pt. 404, subpt. P, app. 2, §201.14. The vocational factors necessary to the grid analysis are not in dispute.[5] At the light exertional level, Rule 202.14 is applied as a framework supporting a finding of not disabled; at the sedentary level, the same vocational profile falls under Rule 201.14, which directs a finding of disabled. *Id.* Yet, plaintiff concedes that at most, this amounts to harmless error. (Mov. Br. p.25.) Thus, remand on this issue is not warranted.

---

[5] The agency's own determination reflects that plaintiff was an individual closely approaching advanced age, that she completed two years of college, and that her past skilled or semiskilled work yielded no transferable skills. (R. Part 2 p.34.)

## V. CONCLUSION

For the reasons stated above, the Commissioner's decision partially denying plaintiff's application for benefits is **AFFIRMED**.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: July 30, 2026